Ralph G. ZABALA, Appellant,

v.

The STATE of Texas, Appellee.

No. 54,129.

Court of Criminal Appeals of Texas.

July 13, 1977.

Rehearing Denied Sept. 14, 1977.

**704**

Frank Roberts, Killeen, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Belton, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from an order revoking probation.

On November 14, 1975, appellant was convicted for the offense of aggravated assault. Punishment was assessed at ten years, probated. One of the conditions of his probation, among others, was that he commit no offense against the laws of this State or any other state or of the United States.

An amended motion to revoke probation was filed wherein it was alleged that appellant had violated condition number one of his probation by possessing marihuana, a controlled substance.

A hearing was held on June 15, 1976, and an order revoking his probation was entered based on the trial court's finding that he had intentionally and knowingly possessed a usable quantity of marihuana of more than four ounces.

In separate grounds of error he challenges the sufficiency of the evidence, the sufficiency of the motion to revoke, the legality of the search which produced the marihuana, and the failure of the trial court to require disclosure of the name of the informer and thereby abused its discretion in revoking his probation.

Detective Charles Spriggs of the Killeen Police Department testified that on May 6, 1976, he was on duty as a member of the narcotics division. That on that day he had received information in person from a confidential informer that at ". . . 119 West Avenue A in the City of Killeen, there were two Latin American males inside the residence and they were making a narcotics purchase and they were buying marihuana." He stated that his informant said that the two individuals were about to leave and described their vehicle parked outside the residence as a 1974 AMC Gremlin bearing Texas license BGY 49. The informant told him, "If you don't hurry up, you're going to lose it", because the only drugs in the residence were the one pound of marihuana, and they were about to leave. The informant also stated that the marihuana would be ". . . in a paper bag, a dark vanilla grocery bag." Spriggs stated that he did not believe that he had time to obtain a warrant so he immediately set up surveillance at the residence. Upon his arrival there at 7:55 p. m. he saw the vehicle described to him by his informer parked in front of the residence. Approximately three to four minutes later, the front door opened and two Latin Americans emerged from the house; one of them had underneath his right arm a paper bag which was rolled up very tightly. The bag matched the description given him by the informer. Both of the individuals appeared to be very nervous. "They were just walking down the sidewalk and kept looking around to the east and to the west there on Avenue A." The street runs east and west.

Appellant got in the driver's side and Jesus Alegos Gonzalez, who was carrying the bag, got into the passenger's side and they departed. Spriggs radioed Officer Hornbeck of the Uniform Patrol Division for assistance in stopping the vehicle. Spriggs kept a moving surveillance of the vehicle until the marked patrol unit caught up with them and stopped the vehicle in question at a nearby U-Tot-Em Store at approximately 8:00. He and Hornbeck looked into the vehicle and saw the same paper bag on the floor of the passenger side; it contained a green plant substance packaged like a brick which was later shown to be 15.19 ounces of marihuana.

Appellant called Gonzalez as his first witness. Gonzalez testified that he and appellant were in the same unit at Fort Hood and that they had been friends since March, 1976. He stated that he owned the Gremlin vehicle and that on the date in question he and his wife had gone to appellant's house to pick up a small poodle dog being given to them by appellant and his wife. Gonzalez said that he then asked appellant if he wanted to go with him to see a friend. He drove to some apartments which were on the same street as the police station, that when they arrived no one was there so they waited a minute and the individual he was supposed to meet showed up. Gonzalez did not know his name. Then they left, and he told appellant, "If you want to drive, go ahead." After they drove away they saw a patrol car make a U-turn and come up behind them. When they saw a second patrol car he told appellant to pull into the U-Tot-Em Store because ". . . I had to buy some things there." After they had stopped, two officers came over to the car and removed the bag with the marihuana. He said that appellant had no knowledge of the contents of the bag.

On cross-examination Gonzalez testified that he knew appellant was on probation as he had taken him on two occasions to visit his probation officer. He said that the paper sack was already in the car when he went to Zabala's home and that when the two of them arrived at the apartments where he was supposed to meet his friend

he carried the sack inside. When they were inside Zabala went to the bathroom and he talked to the individual that had met them but, when asked if that was when he purchased the drugs, he invoked the Fifth Amendment. The only statement Gonzalez would make is that "I went to the house there, and Mr. Zabala didn't have any knowledge of anything." He further stated that he was familiar with the smell of marihuana in both states, burning and laying out, and that he smelled marihuana in the residence and even saw it laying around. Gonzalez said that no one else was present and that as soon as Zabala was finished using the bathroom they left. He stated that he had the sack with him and it was his sack. He admitted he had something in the sack but invoked the Fifth Amendment when asked what was in the sack. Gonzalez then said that he told appellant to drive and handed him the key when they got to the car.

Next, Elizabeth Zabala, appellant's wife, testified that Gonzalez and his wife had been to their house on the evening in question and that her husband had left with Gonzalez to go to a friend's house. She stated that they knew each other well as her husband had been riding to work with him every day for four months because their car was broken down.

Appellant then testified that he was in fact with Gonzalez on May 6, 1976, and that the Gonzalez' had been over to his home that evening. He said that approximately fifteen minutes after they were there Gonzalez asked him if he wanted to go for a ride to a friend's house without telling him the friend's name or address. Nor did he ask Gonzalez why they were going there, and he had never been there before. When they arrived Gonzalez knocked and no one answered, but before they could leave an individual walked up, opened the door and they went into the house. Gonzalez did not appear to know the individual. Zabala then stated that he went to the restroom and when he returned they left. He said that he did not notice Gonzalez carrying a paper sack when they went up to the door but

that he had a "wrapped" paper sack when they left. He did not see what was placed in the sack nor was he present when any conversation was held regarding the sack. Zabala stated that Gonzalez only said, "Let's go home," and then asked him if he wanted to drive. He denied any knowledge of the marihuana.

On cross-examination appellant said that Gonzalez was a "fellow worker" and he had borrowed Gonzalez' car on occasion because his was broken down. He denied ever smelling marihuana or being able to recognize the odor and stated that he did not smell the odor of marihuana at the house nor did he see any laying around when they were there. He said that he went immediately to the restroom because he was sick and had been suffering from diarrhea. Further, he again said that Gonzalez told him they were going to a friend's house but that Gonzalez did not know his own friend's name.

■ Considering the evidence that supports the trial court's order and rejecting the other evidence as the trial court was authorized to do and apparently did do in view of the order revoking probation, we find that evidence sufficient to support the trial court's order. The unlawful possession of marihuana need not be exclusive to reflect a violation of the law. *Ellis v. State,* 456 S.W.2d 398 (Tex.Cr.App. 1970).

■ As for appellant's contention that the motion to revoke probation does not allege an offense in violation of the laws of this State, it is without merit. The State's motion to revoke probation alleged "that on or about the 6th day of May, 1976 in the County of Bell, the State of Texas, he did then and there knowingly and intentionally possess a controlled substance, to wit: a usable quantity of marihuana of more than 4 (four) ounces." The appellant urges that the motion was insufficient because it did not allege that the possession of the marihuana was "unlawful." The allegation was sufficient. *Cook v. State,* 467 S.W.2d 421 (Tex.Cr.App. 1971).

■ Next, he argues that it was error for the court to refuse to require the State to disclose the informer's name. There is no evidence in the record before us that the informer in any way participated in the offense, was present at the time of the transaction or that he was a witness as to whether appellant had committed the act. In fact, both Gonzalez and appellant testified that only one other person was present in the house and that was Gonzalez' friend.

In *Aguilar v. State,* 444 S.W.2d 935, 937 (Tex.Cr.App. 1969), this Court stated:

". . . There was no showing that the informer participated in the offense, was present at the time, or was a material witness as to whether the appellant had committed the act charged. Absent such a showing, the trial court did not err in refusing to require the State to disclose the name of the informer."

See *Royal v. State,* 448 S.W.2d 470 (Tex.Cr. App. 1969), and *Ware v. State,* 467 S.W.2d 256 (Tex.Cr.App. 1971).

We hold that the court did not err in refusing to require the officer to reveal the name of the informant.

■ Lastly, he contends that the trial court erred in admitting evidence that was obtained as a result of an illegal search and arrest without probable cause.

It appears that there was probable cause to make the arrest and search, but it is not necessary to decide the question because Gonzalez, in testifying for appellant, admitted the possession of the bag which was shown to contain the marihuana.

No abuse of discretion having been shown, the judgment is affirmed.

## DISSENTING OPINION

PHILLIPS, Judge, dissenting.

I dissent to the majority's conclusion that the trial judge did not abuse his discretion in ordering appellant's probation revoked. I would hold the evidence insufficient to support a finding that appellant had intentionally and knowingly possessed a usable quantity of marihuana.

The only evidence brought out at trial which could be viewed as even marginally incriminating was that:

(1) Appellant accompanied Gonzalez to the home of an unnamed friend where a purchase of marihuana was made.

(2) Marihuana was visible in the house and there was an odor of burnt marihuana in the house.

(3) Appellant drove Gonzalez' car at a time when Gonzalez was in possession of a wrapped bag of marihuana.

The arresting officer testified that as appellant and Gonzalez left the house with Gonzalez carrying a bag, "they were just walking down the sidewalk and kept looking around to the east and to the west there on Avenue A." However, on cross examination the officer admitted that his offense report only stated that Gonzalez was looking around nervously and mentioned nothing about appellant. He also admitted that his recollection of events would be fresher at the time the offense report was made than at the time of trial.

To establish unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control and management over the contraband, and (2) that the accused knew that the matter possessed was contraband. *Rice v. State*, Tex.Cr.App., 548 S.W.2d 725. The State has failed to establish either of these elements sufficiently, even under the lower standard of proof involved in a probation revocation proceeding. *Scamardo v. State*, Tex.Cr.App., 517 S.W.2d 293.

The fact that appellant was present in the car when the contraband was found is not sufficient to show possession in the absence of direct or circumstantial evidence connecting him to the prohibited item. *Hernandez v. State*, Tex.Cr.App., 517 S.W.2d 782. As in *Hernandez*, there was no evidence presented here to directly link appellant to the contraband. He made no attempt to escape, no incriminating statements to the police at the time of arrest, and no gestures in the direction of the marihuana. Additionally, the marihuana was not in plain view at the time of arrest and Gonzalez and appellant each testified that the entire time they were at the unnamed friend's home appellant was in the bathroom because he was ill.

In reversing the recent case of *Presswood v. State*, Tex.Cr.App., 548 S.W.2d 398, 399 on sufficiency grounds, this Court noted:

"The only evidence in the record tending to establish possession was merely that the appellant was the driver of the automobile at the time Officer Keesy approached it. The record does not reflect how long appellant was in possession or control of the automobile, nor does it show to whom the automobile belonged. The marihuana was found wrapped inside a bank bag which was in the glove compartment of the automobile. There was no marihuana found on either the appellant or his passenger. There is no testimony indicating that either the appellant or his passenger was under the influence of marihuana. Neither Officers Keesy or Kuhn testified that they smelled the odor of marihuana in or around the automobile."

As in *Presswood*, the facts here indicate that no marihuana was found on either appellant or the passenger; there was no testimony that either of the men was under the influence of marihuana; and the arresting officers did not testify that they smelled the odor of marihuana in or around the car. Unlike *Presswood*, the record here clearly shows that appellant was in possession of the car for only a few blocks prior to his arrest and it further shows that Gonzalez, at whose feet the contraband was found in a wrapped bag, was the car's owner and had asked appellant to drive.

The record before us is barren of direct evidence establishing appellant's possession of the controlled substance. Furthermore, the variety of inferences which could be drawn from the circumstantial evidence was such that the evidence was insufficient to support a finding that appellant knowingly possessed marihuana.

Lastly, the record is also devoid of evidence that appellant was familiar with the

odor of marihuana in any state: fresh, burning, or burnt. There was no testimony that appellant was present in any room where marihuana was openly displayed or that he would recognize the substance as such. Once again, I must dissent to the practice of imputing knowledge of the smell of marihuana to citizens who have not had the benefit of police academy training. See *Armstrong v. State*, Tex.Cr.App., 542 S.W.2d 119; dissenting opinion in *Duff v. State*, Tex.Cr.App., 546 S.W.2d 283.

Because the State failed to meet either prong of its burden under *Hernandez v. State*, Tex.Cr.App., 538 S.W.2d 127, and the cases discussed above, I would find an abuse of discretion in the trial judge's order revoking probation. For these reasons, I respectfully dissent.

ROBERTS, Judge, joins.